ALEXANDER B. CVITAN (SBN 81746),
E-mail: alc@rac-law.com
PETER A. HUTCHINSON (SBN 225399), and
E-mail: peterh@rac-law.com
MELISSA PADILLA LEMUS (SBN 333721)
E-mail: melissap@rac-law.com
REICH, ADELL & CVITAN, A Professional Law Corporation
330 N. Brand Blvd, Suite 250, Glendale, California 91203
Telephone: (213) 386-3860; Facsimile: (213) 386-5583

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>5M CONTRACTING, INC., a California corporation,<br><br>Defendant. | CASE NO.:<br><br>**COMPLAINT FOR MONETARY DAMAGES DUE TO EMPLOYEE BENEFIT PLANS**<br><br>[29 U.S.C. §§ 185, 1132(a)(3), 1132(g)(2) and 1145] |

Plaintiff, Construction Laborers Trust Funds for Southern California Administrative Company, a Delaware limited liability company, alleges:

**JURISDICTION AND VENUE**

1.   This action is brought by a fiduciary administrator on behalf of employee benefit plans against an employer.  It is brought to enforce of the terms of collective bargaining agreements and plan trust agreements to: (a) recover fringe benefit contributions and related damages due by the employer on behalf of its

492385.2                                                               1

employees. This Court has jurisdiction pursuant to: sections 502(g)(2) and 515 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1132(g)(2) and 1145; section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3); and section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. Pursuant to ERISA section 502(e)(2), 29 U.S.C. § 1132(e)(2), venue is proper in this district for each of the following reasons: the plans are administered in this district; the employer's performance and breach took place in this district; and the employer resides or may be found in this district.

## PARTIES

2. Plaintiff ("CLTF") is an administrator of, agent for collection for, a fiduciary to, and brings this action on behalf of the following employee benefit plans: Laborers Health and Welfare Trust Fund for Southern California; Construction Laborers Pension Trust for Southern California; Laborers Annuity Plan for Southern California; Construction Laborers Vacation Trust for Southern California; Laborers Training and Re-Training Trust Fund for Southern California; Fund for Construction Industry Advancement; Center for Contract Compliance; Laborers Contract Administration Trust Fund for Southern California; Laborers' Trusts Administrative Trust Fund for Southern California; and Southern California Environmental Contractors Association Contract Administration/Industry Promotion Trust Fund (collectively "TRUST FUNDS"). The TRUST FUNDS are express trusts created by written agreements; employee benefit plans within the meaning of ERISA section 3(3), 29 U.S.C. § 1002(3); and multi-employer plans within the meaning of ERISA section 3(37)(A), 29 U.S.C. § 1002(37)(A). The TRUST FUNDS exist pursuant to ERISA and LMRA section 302, 29 U.S.C. § 186. CLTF and the TRUST FUNDS' principal places of business are in the County of Los Angeles, State of California.

/ / /

3. CLTF is a fiduciary as to the TRUST FUNDS in that it:

    a. Exercises discretionary authority or discretionary control with respect to the collection of delinquent (or possibly delinquent) fringe benefit contributions due to the TRUST FUNDS, including but not limited to discretion in auditing employers, deciding what claims to assert, acting as agent of the TRUST FUNDS in asserting claims, waiving liquidated damages, settling claims, and releasing claims; and

    b. Exercises authority or control with respect to management or disposition of assets of the TRUST FUNDS, including but not limited to receiving delinquent contributions collected and holding them in a bank account in its own name over which it has check-writing authority, and then exercising discretion in allocating those assets among the different TRUST FUNDS, different participants, different time-periods and different jobs.

4. CLTF is informed and believes, and on that basis alleges, that defendant 5M CONTRACTING, INC. ("EMPLOYER") is a corporation organized and existing under the laws of the State of California; has a principal place of business in the City of Tustin, County of Orange, State of California; and does, or at all relevant times did, business in the State of California as a construction contractor in an industry affecting interstate commerce.

## OTHERS

5. The Southern California District Council of Laborers and its affiliated Local Unions, including Local Union 300 (collectively "UNION") is, and at all relevant times was, a labor organization representing employees affecting interstate commerce. The UNION is not a party to this action.

/ /

## AGREEMENTS

6. Various public entities in Southern California have entered into project labor agreements (also known as "Project Stabilization Agreements", "Continuity Of Work Agreements", and "Community Workforce Agreements") with unions, including the UNION, and employer associations establishing terms and conditions of work on public works projects. In each case, by, and as a condition of, performing work on such a project, contractors must abide by the terms of the applicable project labor agreement, including terms related to the payment of employee wages and fringe benefits. The EMPLOYER has performed work on such public works projects, including project(s) for the City of Los Angeles (governed by the project labor agreement known "City of Los Angeles Proposition HHH", hereinafter "HHH PLA".) The Project Labor Agreements, including the HHH PLA are signed by the UNION and other labor unions (as parties to the agreement) and incorporate by reference the unions' respective collective bargaining agreements. The UNION's collective bargaining agreements, which are among those incorporated by reference into the Project Labor Agreements, are known as the Construction Master Labor Agreements, and includes Agreements known as the Southern California Master Labor Agreement and Laborers Asbestos Agreements ("Laborers Agreements"). EMPLOYER acknowledged its work under the HHH PLA and executed an Asbestos Abatement Subscription Agreement to the TRUST FUNDS ("Asbestos Subscription") for its HHH PLA Project(s).

7. In addition to working under the HHH PLA, EMPLOYER executed and became bound to a Laborers Asbestos Agreement ("Asbestos Agreement") with the UNION for work on certain projects for School Districts. EMPLOYER also executed several project only Laborers Apprenticeship Subscription Agreements ("Apprentice Agreements") for work on several public works projects on which registered apprentice laborers were dispatched to EMPLOYER by the Southern California Laborers Joint Apprenticeship Committee and/or were otherwise

employed on public works projects.

8. Pursuant to the above referenced Agreements, employers become – and the EMPLOYER became and is – bound to the terms and conditions of the various trust agreements that created each of the TRUST FUNDS ("Trust Agreements"). When referenced collectively hereinafter, the above referenced Agreements, HHH PLA, Laborers Agreements, Asbestos Subscription, Asbestos Agreement and Apprentice Agreements and Trust Agreements shall collectively be referred to as the "AGREEMENTS".

9. Under the terms of the AGREEMENTS, employers, including the EMPLOYER, are required to submit monthly fringe benefit contributions ("Monthly Contributions") to the TRUST FUNDS for all hours worked by (or paid for) their employees who perform work covered by the Agreements ("Covered Work").

10. Under the terms of the AGREEMENTS, employers, including the EMPLOYER, are required to submit to the TRUST FUNDS, with their Monthly Contributions, monthly reports, itemized by project, listing the names of their employees who performed Covered Work, their Social Security numbers, the hours of work performed by (or paid for) each, and the resulting Monthly Contributions due for them ("Monthly Reports"). The TRUST FUNDS rely on Monthly Reports – and the accuracy of those reports – to determine the amount of Monthly Contributions due to the TRUST FUNDS by employers and the credit toward fringe benefits to be allocated to their employees.

11. The AGREEMENTS provide for the payment of interest on delinquent Monthly Contributions from the date due at a rate set by the trustees of the TRUST FUNDS. The trustees have set that rate at five percent (5%) above the prime rate set by the Federal Reserve Board of San Francisco, California on contributions due on projects covered under the HHH PLA, and at 10% on Monthly Contributions due under the projects covered under the Apprentice Agreements. The AGREEMENTS also provide for the payment of liquidated damages for each month of delinquent

Monthly Contributions or Monthly Reports, for each Trust Fund separately, in the amount of twenty percent (20%) of the delinquent Monthly Contributions due to the Trust Fund or $25, whichever is greater (except with respect to the Laborers Contract Administration Trust Fund for Southern California, which assesses liquidated damages at the greater of $20 or ten percent (10%)) for the Monthly Contributions due under the HHH PLA projects, and Laborers Asbestos Agreement. In addition, employers are required to pay fees for the submission of dishonored checks.

12. The failure of employers to pay Monthly Contributions when due causes damages to the TRUST FUNDS and its participants beyond the value of the unpaid Monthly Contributions, which are difficult to quantify. Apart from the fees and costs incurred in litigation, the harm caused includes, but is not limited to, the administrative costs of processing and collecting delinquencies, the costs of adjusting benefit credits and notifying participants, the additional burden placed on contractors who faithfully pay their contributions, and the burden upon participants and beneficiaries who may be unable to qualify for benefits they may have otherwise been entitled to had it not been for the delinquency of their employer. The liquidated damages provision of the AGREEMENTS was meant to compensate for the loss to the TRUST FUNDS, which is incurred even if the Monthly Contributions for a given month are later paid. It is based on the TRUST FUNDS' ratio of collection costs over amounts collected, which are regularly reported to the TRUST FUNDS' trustees.

13. Under the terms of the AGREEMENTS, employers, including the EMPLOYER, agree to subcontract Covered Work only to entities that are signatory to a Construction Master Labor Agreement applicable to the work performed. If an employer subcontracts Covered Work to a non-signatory entity, the employer becomes liable to the TRUST FUNDS in an amount equal to the Monthly Contribution s that would have been due if the entity had been signatory (plus

1  interest, liquidated damages and audit fees thereon).

2        14.    Under the terms of the AGREEMENTS, employers, including the EMPLOYER, agree not to subcontract Covered Work to entities that are delinquent to the TRUST FUNDS. If an employer subcontracts Covered Work to such an entity the employer becomes under the terms of the AGREEMENTS liable to the TRUST FUNDS for the Monthly Contributions due by the subcontractor and any lower-tier subcontractors.

      15.    The AGREEMENTS provide the TRUST FUNDS with specific authority to examine the payroll and business records of employers, including the EMPLOYER, to determine whether they have reported all hours worked by (or paid for) their employees who perform Covered Work, and whether they have paid the appropriate Monthly Contributions and other amounts due by them to the TRUST FUNDS. The AGREEMENTS further provide that employers, including the EMPLOYER, must maintain records sufficient for the TRUST FUNDS to verify proper Monthly Reporting, and, where there has been inaccurate Monthly Reporting, to determine the additional amounts due, and that the employer must pay the TRUST FUNDS' audit fees if it is delinquent to the TRUST FUNDS. The TRUST FUNDS have delegated the authority to perform such audits to CLTF.

      16.    The AGREEMENTS require employers to pay the TRUST FUNDS' attorneys' fees and costs of litigation to enforce the Agreements' foregoing terms, including the Monthly Contribution, Monthly Reporting, subcontracting and audit provisions.

## DAMAGES

      17.    The EMPLOYER has failed to timely submit Monthly Contributions due by it to the TRUST FUNDS. Pursuant to the Agreements and ERISA sections 502(g)(2) and 515, 29 U.S.C. §§ 1132(g)(2) and 1145, the EMPLOYER owes the TRUST FUNDS a known amount of $23,532.44 for unpaid or late-paid Monthly

Contributions and related damages less a credit of $4,536.04 for some or all of the months during the period of June 2018 through October 2018, and February 2020 ("Known Delinquency"). The Known Delinquency consists of: $12,371.85 in unpaid Monthly Contributions; $4,480.00 in interest through August 1, 2023; $2,272.77 in liquidated damages; $4,480.00 in audit fees and a credit of $4,536.04.

18. The Known Delinquency were partially discovered in an audit of EMPLOYER's records produced in response to a request by CLTF for it to submit to an audit, the first of which were received by CLTF in or about March 2021, and thereafter, during several different months thereafter; however, records were not produced for the audit to completely determine the if all hours worked by employees were properly reported and Monthly Contributions paid on their behalf. A partial audit was therefore initially estimated and billed to EMPLOYER on or about October 15, 2021; however, after receipt of some additional records from EMPLOYER, the audit was revised again and billed to EMPLOYER on or about July 20, 2023 as a partial audit.

19. CLTF will establish by proof at the time of trial or through dispositive motion the Known Delinquency and any additional amounts determined to be due to the TRUST FUNDS by the EMPLOYER, including any additional Monthly Contributions, interest, liquidated damages, audit fees, fees for the submission of checks not honored by the bank upon which they were drawn, attorneys' fees and costs, and amounts owed as a result of work performed by subcontractors of the EMPLOYER (or lower-tier subcontractors). If deemed necessary by the Court, CLTF will amend its complaint to add any additional amounts determined to be due. Any and all conditions to the EMPLOYER's obligations under the Agreements to pay the Known Delinquency and any additional amounts due under the Agreements to the TRUST FUNDS have been met.

20. It has been necessary for the TRUST FUNDS to engage counsel to bring this action to compel compliance with the Agreements which provide that in the

event litigation is necessary with respect to any of the fringe benefit Monthly Contributions and/or damages against EMPLOYER, then EMPLOYER would pay reasonable attorney's fees and all other reasonable expenses of collection, including audit fees.

21. Under Sections 515 and 502(g) of ERISA, EMPLOYER is liable to the TRUST FUNDS not only for the amount of delinquent Monthly Contributions but also (a) for pre-judgment and post-judgment interest on the delinquent sums (as provided for in Section 502(g) of ERISA); (b) for the higher of interest or liquidated damages (as provided for in Section 502(g) of ERISA); (c) for attorneys' fees; and (d) for other relief permitted by Section 502(g) of ERISA.

**WHEREFORE, CLTF prays for judgment as follows:**

A. For $12,371.85 in unpaid Monthly Contributions, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(A).

B. For $4,407.82 in interest through August 1, 2023 on unpaid or late paid Monthly Contributions at the rate of five percent above the variable prime rate set by the Federal Reserve Board of San Francisco, California, plus such additional interest that has or does hereafter accrue thereafter, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(B) on unpaid Monthly Contributions for amounts owed on projects under the HHH PLA, and at 10% on Monthly Contributions due on projects under the Apprentice Agreements.

C. For $2,272.77 in liquidated damages for unpaid and late-paid Monthly Contributions at, for each of the TRUST FUNDS separately, the greater of 20% or $25 (except with respect to the Laborers Contract Administration Trust Fund for Southern California, for which liquidated damages are sought at the greater 10% or $20), as required by the Agreements and 29 U.S.C. § 1132(g)(2)(C).

/ / /

D.  For $4,480.00 in audit fees, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(E) and a credit against the total due of $4,536.04 against the total due.

E.  For, according to proof, any additional Monthly Contributions, interest, liquidated damages, audit fees, insufficient funds check fees, and amounts owed as a result work performed by any subcontractors of the EMPLOYER (or lower-tier subcontractors) determined to be due, pursuant to the Agreements and 29 U.S.C. §§ 1132(g)(2) and 1145.

F.  For reasonable attorneys' fees and costs of suit, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(D).

G.  For such other relief that this Court deems appropriate, pursuant to any authority of the Court, including but not limited to the authority established by 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3).

REICH, ADELL & CVITAN
A Professional Law Corporation

DATED: August 10, 2023

By:  /s/ Melissa Padilla Lemus
MELISSA PADILL LEMUS
Attorneys for Plaintiff

492385.2

10